CHARLES H. FAIRCHILD and Others, Plaintiffs, *v.* IVAN B. GRAY and Others, Defendants.

County Court, Cayuga County, April 26, 1930.

*A. J. Parker*, for the plaintiffs.

*Benjamin C. Mead*, for the defendants.

MOSHER, J. Charles H. Fairchild, one of the plaintiffs foreclosing their second mortgage herein, was appointed without

objection " receiver of the rents and profits of the mortgaged premises described in the complaint," consisting of a large garage property in the city of Auburn. (*Ranney* v. *Peyser*, 83 N. Y. 1; *Keeney* v. *Home Ins. Co.*, 71 id. 396; *Bolles* v. *Duff*, 37 How. Pr. 162.) The subsequent bankruptcy of the mortgagors and the deficiency judgment against them confirmed the proof of insufficiency of the security. (*Syracuse City Bank* v. *Tallman*, 31 Barb. 201; *Matter of Busch Brewing Co.*, 41 App. Div. 204, 206.)

The plaintiffs claim the balance to apply on said deficiency (*Harris* v. *Taylor*, 22 App. Div. 109); but the trustee in bankruptcy of the mortgagors objects to the account and submits that all such receiver was entitled to take under the order of his appointment was the reasonable rental value of the real estate covered by the mortgage in foreclosure and that all the funds received by him above that amount through his conducting the business of the bankrupts belongs to said trustee.

The receiver was unable to collect any rent of the mortgagors because they immediately surrendered possession. (*Public Bank of N. Y.* v. *London*, 159 App. Div. 484.) There is no proof he could have rented the premises to any one else, or what, if any, rent he could have obtained therefor. The testimony of said Fairchild in the bankruptcy court that immediately following the foreclosure sale he rented this whole property for $375 per month does not establish what rent he could have received for the short, uncertain period of twenty-four days he was in possession before the sale. He is chargeable with actual, not estimated, receipts.

The receiver took immediate possession of the property *suo motu* (*Iddings* v. *Bruen*, 4 Sandf. Ch. 417, 425) and found that the owners had previously rented portions of the building to the Cayuga Omnibus Corporation under a written lease for $200 a month, with the right to more space for storing additional buses at $10 a month each; also the washing room and the repair room for fifty per cent and forty per cent respectively of the receipts therefrom, as compensation for the use thereof (*Stephens* v. *Reynolds*, 6 N. Y. 454, 458; *Thorn* v. *DeBreteuil*, 86 App. Div. 405, 415); space to various people to store their cars by the month, and the rest of the space for day or night storage. They were not made parties to the foreclosure and their rights were unaffected thereby. (*Commonwealth Mortgage Co.* v. *DeWaltoff*, 135 App. Div. 33, 35; *Olive* v. *Levy*, 201 id. 262.) The receiver could not oust them but took subject to them. (*Burtaine* v. *Barr*, 194 App. Div. 906.) As was said by LEHMAN, J., in *McDonald* v. *Cohen* (65 Misc. 489, at p. 490): " The leases previously made by the mortgagor are not made void by such an appointment, but rents then due and unpaid, or thereafter accruing, must be paid to

such receiver." They attorned to the receiver and paid him without requiring a court order. (Rules Civ. Prac. rule 175.) The amounts and parties were satisfactory to the receiver as to the previous owners (*Witthaus* v. *Capstick*, 117 App. Div. 212, 214) and come within the trustee's definition, " rent means the money received for the use of lands." The terms are not shown unusual or unreasonable and the net balance approximates the present rental. (*Shreve* v. *Hankinson*, 34 N. J. Eq. 413.) He exercised no unusual discretion and made no new leases or arrangements but only maintained the *status quo* by continuing to utilize unoccupied spaces for day and night storage as his predecessors had done, on similar terms, as advantageous as he could secure, to make the property productive and get as much as he reasonably could from it, without necessity of a court order. (*Bolles* v. *Duff, supra; Northwestern Mut. L. Ins. Co.* v. *Burr*, 60 Neb. 467; 83 N. W. 664; *Shreve* v. *Hankinson, supra;* Edw. Recrs. 123; Kerr Recrs. 195.) The receiver need not lease the whole property, because that is not the only mode of perception. (*Thorn* v. *DeBreteuil*, 86 App. Div. 405, 418.)

His receipts are " rents," or " profits," which is a broader term and includes rents (*Thorn* v. *DeBreteuil, supra*), and is susceptible of various meanings under variant circumstances. (*Rogers-Ruger Co.* v. *McCord*, 115 Wis. 261, 264; 91 N. W. 685.) Profits and income are sometimes said to be equipollent and tautological (*Matter of Proctor*, 85 Hun, 572; *Matter of Clark*, 62 id. 275, 282; *Thorn* v. *DeBreteuil, supra*) and " used as synonymous terms; but, strictly speaking, ' income ' means that which comes in, or is received from any business or investment of capital, without reference to the outgoing expenditures; while ' profits ' generally mean the gain which is made upon any business or investment when both receipts and payments are taken into the account " (*People* v. *Supervisors of Niagara*, 4 Hill, 20, 23); income of whatever character it may be over and above the costs and expenses of receipt and collection (*Mersey Docks* v. *Lucas*, [L. R.] 8 App. Cas. 891, 905); the benefit or advantage remaining after all costs, charges and expenses have been deducted (*Mackey* v. *Millar*, 6 Phila. [Pa.] 527); the excess of returns, or of receipts over expenditures; that is, net earnings or gains (*Mayer* v. *Nethersole*, 71 App. Div. 383, 388; *Cross* v. *Long Island L. & T. Co.*, 75 Hun, 533, 534; *Prince* v. *Lamb*, 128 Cal. 120, 126; 60 Pac. 689; *Curry* v. *Warner Co.*, 2 Marv. [Del.] 98, 110; 42 Atl. 425; *Connolly* v. *Davidson*, 15 Minn. 519; 2 Am. Rep. 154; *People* v. *San Francisco Sav. Union*, 72 Cal. 199, 202; 13 Pac. 498; *Nelson* v. *Hiatt*, 38 Neb. 478, 485; 56 N. W. 1029; *Bain* v. *Ætna L. Ins. Co.*, 21 Ont. 233, 241; *Jones* v. *Davidson*, 2 Sneed [Tenn.], 447, 452; *Hayes* v. *Hayes*, 66 N. H. 134, 135; 19 Atl. 571; *Dean* v. *Dean*, 54

Wis. 23, 34; 11 N. W. 239); the receipts over and above current expenses, net receipts. (*Eyster* v. *Centennial Bd. of Finance*, 94 U. S. 500, 503.)

It has been stated that the word " profits " when applied to real estate is synonymous with " rents " (*Matter of Vedder*, 15 N. Y. Supp. 798; Burrill's Law Dict. 344), but, as was said in *Taylor* v. *Harwell* (65 Ala. 1, 11), " it was never confounded with rents, or with proceeds; it denoted the annual gain, or income, from the sale of products (of a plantation), after a deduction of the expenses of cultivation." Technically, rent is something which a tenant renders out of the profits of the land which he enjoys (*Otis* v. *Conway*, 114 N. Y. 13, 16), but one may receive the profits of land by his own occupancy (*People* v. *Van Rensselaer*, 8 Barb. 189, 200), and is entitled to the earnings not as rent, but as profits. (*Bennett* v. *Austin*, 81 N. Y. 309, 319.) The word " profits " when applied to real estate means the produce of land (*Matter of Vedder*, *supra*, quoting Burrill Law Dict.), " comprehends the produce of the soil whether it arises above or below the surface; as herbage, wood, turf, coal, minerals, stones; also fish in a pond or running water " (*Russell* v. *Berry*, 70 Ark. 317, 318; 67 S. W. 864, quoting Bouvier Law Dict.); " tiles, brick and earth taken, though not annually from an estate " (*Stapleton* v. *Stapleton*, 21 L. J. Ch. 434, 437), and has been construed to mean all the products including crops, stock, hogs and poultry (*Richmond* v. *Connell*, 55 Conn. 403, 404; 11 Atl. 853) and increase of live stock, although perhaps not in a strictly etymological sense (*Harris* v. *Van de Vanter*, 17 Wash. 489, 492; 50 Pac. 50), and denotes not the receipt of rent from a tenant, but the receipt of the actual proceeds of the land. (*Rennie* v. *Frame*, 29 Ont. 586, 590.) These were limited largely to emblements (*Hamilton* v. *Austin*, 36 Hun, 138), or rents, or both (*Matter of Busch Brewing Co.*, 41 App. Div. 204, 207), in former days when the soil produced mainly agricultural products, but in these modern days of cities and civilization when real property produces far more than crops in the myriad variety of proceeds and profits from houses and hotels, apartment houses and garages, business and industrial plants and establishments erected thereon or attached thereto, the word " profits " has been given a wider meaning, and the courts have liberalized the term and extended it to include everything produced or furnished or earned by real property, or received for its use, or even manufactured by a plant which is a part of the realty. (*Fifty-ninth St. R. E. Co.* v. *Murphy*, 95 Misc. 191.) In the English courts also the words " rents " and " profits " have not been confined to such as are annual but have been extended beyond the *prima facie* meaning of the words. (*Mills* v. *Banks*, 3 P. Wms. 1,

7; 24 Eng. Rep. 943; *Bootle* v. *Blundell*, 19 Ves. Jr. 494, 526; 34 Eng. Rep. 600.)

The trustee contends that the receiver undertook for his own profit to do more than simply receive the rents and profits, but actually did conduct the business at these premises which had been previously run by the bankrupts and thereby received very much more than the rental value of these premises. I find no authorities which would limit the receiver under these circumstances to the rental value thereof, and the nature of the real property sometimes requires a receiver to manage and operate railroads (*Decker* v. *Gardner*, 124 N. Y. 334, 338; *Woodruff* v. *Erie Ry. Co.*, 93 id. 609; *Frank* v. *N. Y., L. E. & W. R. R. Co.*, 122 id. 197, 218; *Herring* v. *N. Y., L. E. & W. R. R. Co.*, 105 id. 340, 371, 375; *Quincy, M. & P. R. R. Co.* v. *Humphreys*, 145 U. S. 82), hotels and restaurants (*Stokes* v. *Hoffman House*, 46 App. Div. 120), manufacturing plants (*Fifty-ninth St. R. E. Co.* v. *Murphy*, 95 Misc. 191, 192), and other property (*Weeks* v. *Weeks*, 106 N. Y. 626, 631), to the end that the value of property which necessarily depends largely upon the continuance of business may not be depreciated and that its income may not be diverted to the payment and satisfaction of debts which are not liens upon the property (*Decker* v. *Gardner*, 124 N. Y. 334, 339) and for the purpose of preservation. (*Mercantile Trust Co.* v. *Kings Co. El. R. Co.*, 40 App. Div. 141, 142.) The words " rents and profits," indicating the source from which a fund is to be raised, have been interpreted as including the results of a sale, which is authorized when there is nothing to exclude that construction. (*Schermerhorne* v. *Schermerhorne*, 6 Johns. Ch. 70; *University* v. *Tucker*, 31 W. Va. 621, 627, 628; 8 S. E. 410; *Green* v. *Belchier*, 1 Atk. 505, 507; *Mills* v. *Banks, supra.*) The business previously conducted on this real property enhanced its rental and sale value and its salability depended to a considerable extent upon its actual and potential use which good faith to all concerned required him to preserve. (*Iddings* v. *Bruen*, 4 Sandf. Ch. 417, 426; *Lottimer* v. *Lord*, 4 E. D. Smith [N. Y.], 183; *Howell* v. *Ripley*, 10 Paige, 43, 48; *Citizens' Savings Bank* v. *Wilder*, 11 App. Div. 63; *Decker* v. *Gardner, supra; Bolles* v. *Duff, supra.*) These bankrupts and their creditors and trustee would have had more cause for complaint if the receiver had destroyed or crippled this business or its good will, and so caused or contributed to a deficiency judgment herein. (Edw. Recrs. 142.)

It appears from the account filed that it was agreed that the December fifteenth rent from the bus company should be paid into court and turned over to the receiver, if appointed, but the mortgagors appropriated that one hundred and five dollars to their own

use before the appointment, and later, in order to make good, turned over to the receiver from rents which were owing to them before his appointment sixty dollars and seventy cents, and there was used with their consent to partly repay said rent, coal on hand, oil, alcohol and accessories in the amount of fourteen dollars and forty-three cents. While the mortgagor is entitled to the rents and profits up to the time of sale (*Ross* v. *Vernam*, 6 App. Div. 246), and the court has no power to order him to refund rents which have been collected (*Wyckoff* v. *Scofield*, 98 N. Y. 475; *Astor* v. *Turner*, 11 Paige, 436), nevertheless he may be divested of the right to receive them by the appointment of a receiver, who acquires a specific, equitable lien thereon (*Ranney* v. *Peyser, supra; Rider* v. *Bagley*, 84 N. Y. 461; *Post* v. *Dorr*, 4 Edw. Ch. 412; *Astor* v. *Turner, supra; Bank of Ogdensburgh* v. *Arnold*, 5 Paige, 38), or he may assign (*Harris* v. *Taylor*, 35 App. Div. 462) or pledge them (*Hollenbeck* v. *Donnell*, 94 N. Y. 342; *Bank of Ogdensburgh* v. *Arnold, supra*), or make some mutual arrangement for the mortgagee to obtain them (*Sullivan* v. *Rosson*, 223 N. Y. 217, 225; *Stillman* v. *Van Beuren*, 100 id. 439, 445), personally, or through his attorney. (*Bradley & Currier Co.* v. *Hofmann*, 70 App. Div. 77, 81.) The receiver is entitled to rents and profits accrued as well as accruing during the pendency of the suit (*Wyckoff* v. *Scofield* and *Hollenbeck* v. *Donnell, supra; Rider* v. *Bagley, supra; Argall* v. *Pitts*, 78 N. Y. 239; *Donlon & Miller Mfg. Co.* v. *Cannella*, 89 Hun, 21, 23; *Lofsky* v. *Maujer*, 3 Sandf. Ch. 69, 71; *Mutual Life Ins. Co.* v. *Belknap*, 19 Abb. N. C. 345), and could collect them in cash, or other personal property in lieu thereof as the best substitute he could receive under the circumstances and convert it into money. (Rules Civ. Prac. rule 175.) Equity regards that done which ought to be done. (*Hollenbeck* v. *Donnell, supra*, p. 347.) The plaintiffs are entitled to the proceeds of defendants' property collected by the receiver even though not subject to the mortgage. (*Cal. Title Ins., etc., Co.* v. *Consolidated Piedmont-Cable Co.*, 117 Cal. 237; 49 Pac. 1.)

The expenses set forth in the account are immaterial for, if they were disallowed, the gross receipts would still be far less than the deficiency judgment to which they are applicable, so there can be no one to object except the receiver and his coplaintiff. They include insurance to preserve the property from loss by fire (*Stevens* v. *Hadfield*, 196 Ill. 253), coal necessary to furnish heat required by the bus company's lease (*Dow* v. *Nealis*, 47 Misc. 153), and water, telephone, electric lights, printing tags to place on cars and other items essential to secure maximum rentals, some of them so small that the maxim " *De minimis non curat lex* " applies. (*Crook* v.

*Rindskopf*, 105 N. Y. 476, 484.) The receiver managed the property with prudence, zeal and integrity and did only what was necessary to obtain the utmost net income from the mortgaged premises, as an officer of the court (*Stokes* v. *Hoffman House, supra*), and is entitled to credit for proper charges in the discretion of the court (*Stevens* v. *Hadfield, supra; Northwestern Mut. L. Ins. Co.* v. *Burr, supra; Western Union Tel. Co.* v. *Boston Safe Deposit & T. Co.*, 104 Fed. 580; *Wyckoff* v. *Scofield, supra*), and if specific authority is deemed requisite for his acts, an order therefor may be granted, *nunc pro tunc*, except as to the items for greasing cars and gasoline, oil, alcohol and accessories profits, which were his personal business and concern. It would be unfair for the trustee and creditors to reach this fund created by the superior diligence of the judgment creditors, which otherwise would have gone to the owners and been lost to all parties. (*Ranney* v. *Peyser, supra; Sullivan* v. *Rosson, supra*.) The law protects a party when, by greater assiduity, he acquires a specific lien upon the rents and he is entitled to retain them and to apply the same upon his mortgage. (*Bradley & Currier Co.* v. *Hofmann, supra; Izzo* v. *McKay*, 110 Misc. 708.) *Vigilantibus et non dormentibus jura subveniunt.* (*Popham* v. *Cole*, 66 N. Y. 69, 76; *Kingston Bank* v. *Eltinge*, 40 id. 391, 396; *Daubmann* v. *Schulting*, 12 Hun, 1, 14; *Greenleaf* v. *Mumford*, 19 Abb. Pr. 469, 476; *Carman* v. *Brown*, 4 Dem. 96, 101.)